UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re           Chapter 11

ULTRA STORES, INC., et al.,    Case No. 09-11854 (BRL)

    Debtors.      (Jointly Administered)

-------------------------------------------------------x

## MODIFIED FIRST JOINT CONSOLIDATED PLAN OF ULTRA STORES, INC., et al., UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Dated:  June 15, 2009

HERRICK, FEINSTEIN LLP
Joshua J. Angel
Andrew C. Gold
Frederick E. Schmidt
Seth F. Kornbluth
Hanh V. Huynh
2 Park Avenue
New York, NY 10016
Phone: 212.592.1400

Attorneys for Ultra Stores, Inc.,
et al., Debtors and
Debtors in Possession

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS AND RULES OF
INTERPRETATION.................................................................................7

| | | |
|---|---|---|
| 1.1 | "Ad Hoc Committee" | 7 |
| 1.2 | "Administrative Expense Claim" | 7 |
| 1.3 | "Administrative Expense Claim Bar Date" | 7 |
| 1.4 | "Affiliate". | 8 |
| 1.5 | "Allowed" | 8 |
| 1.6 | "Avoidance Actions" | 8 |
| 1.7 | "Ballot" | 8 |
| 1.8 | "Balloting Agent" | 8 |
| 1.9 | "Bankruptcy Code" | 8 |
| 1.10 | "Bankruptcy Court" | 8 |
| 1.11 | "Bankruptcy Rules" | 8 |
| 1.12 | "Bar Date" | 8 |
| 1.13 | "BoA" | 9 |
| 1.14 | "Business Day" | 9 |
| 1.15 | "Cash" | 9 |
| 1.16 | "Causes of Action" | 9 |
| 1.17 | "Certificate of Incorporation" | 9 |
| 1.18 | "Challenge" | 9 |
| 1.19 | "Challenge Period" | 9 |
| 1.20 | "Chapter 11 Cases" or "Cases" | 9 |
| 1.21 | "Claim" or "Claims" | 9 |
| 1.22 | "Claimant" | 9 |
| 1.23 | "Class" | 10 |
| 1.24 | "Confirmation Date" | 10 |
| 1.25 | "Confirmation Hearing" | 10 |
| 1.26 | "Confirmation Order" | 10 |
| 1.27 | "Code" | 10 |
| 1.28 | "Consigned Goods" | 10 |
| 1.29 | "Consignors" | 10 |
| 1.30 | "Consignment Agreements" | 10 |
| 1.31 | "Consignment Order" | 10 |
| 1.32 | "Convenience Claims" | 10 |
| 1.33 | "Creditors' Committee" | 10 |
| 1.34 | "Creditors' Committee Counsel" | 11 |
| 1.35 | "Crystal" | 11 |
| 1.36 | "Crystal Exit Loan Documents" | 11 |
| 1.37 | "Crystal Exit Note" | 11 |
| 1.38 | "Crystal Pre-Petition Term Loan Claim" | 11 |
| 1.39 | "Crystal Term Loan Documents". | 11 |
| 1.40 | "Debtors" or "Debtors in Possession" | 11 |
| 1.41 | "Debtors' Counsel" | 11 |
| 1.42 | "DIP Agent" | 11 |
| 1.43 | "DIP Claim" | 11 |

1.44    "DIP Credit Agreement"......................................................11
1.45    "DIP Facility"......................................................................11
1.46    "DIP Financing Agreements"..............................................12
1.47    "DIP Obligations".............................................................12
1.48    "DIP Secured Parties" s....................................................12
1.49    "Disallowed Claim"..........................................................12
1.50    "Disbursing Agent"..........................................................12
1.51    "Disclosure Statement".....................................................12
1.52    "Disputed".......................................................................12
1.53    "Distribution(s)"...............................................................13
1.54    "Effective Date"................................................................13
1.55    "Employment Agreements".................................................13
1.56    "Entity"............................................................................13
1.57    "Equity Interest"...............................................................13
1.58    "Estate(s)".......................................................................13
1.59    "Final DIP Order".............................................................13
1.60    "Final Order"....................................................................13
1.61    "General Unsecured Claim"................................................13
1.62    "Impaired".......................................................................13
1.63    "Indemnification Obligation"..............................................14
1.64    "Intercompany Claim".......................................................14
1.65    "Interest".........................................................................14
1.66    "Lien"..............................................................................14
1.67    "Management and Employee Incentive
        Plan"...............................................................................14
1.68    "New Ultra Stock".............................................................14
1.69    "Person"..........................................................................14
1.70    "Petition Date".................................................................14
1.71    "Plan"..............................................................................14
1.72    "Plan Documents".............................................................14
1.73    "Post-Confirmation BoA Loan Documents".........................14
1.74    "Post-Confirmation BoA Loan Facility"...............................15
1.75    "Post-Confirmation Intercreditor
        Agreements".....................................................................15
1.76    "Post-Petition".................................................................15
1.77    "Pre-Effective Date Consigned Goods"...............................15
1.78    "Pre-Petition"...................................................................15
1.79    "Pre-Petition First Lien Agent"..........................................15
1.80    "Pre-Petition First Lien Agreements".................................15
1.81    "Pre-Petition First Lien Claim".........................................15
1.82    "Pre-Petition First Lien Debt"..........................................15
1.83    "Pre-Petition First Lien Secured Parties"...........................15
1.84    "Priority Non-Tax Claim"..................................................15
1.85    "Priority Tax Claim".........................................................15
1.86    "Professional Fee Claim"..................................................15
1.87    "Professional Person".......................................................15

1.88 "Pro Rata" or "Pro Rata Share" ........................................................16
1.89 "Reorganized Ultra" ........................................................................16
1.90 "Schedules" ...................................................................................16
1.91 "Secured Claim" .............................................................................16
1.92 "Trade Lien" ...................................................................................16
1.93 "Trade Lien Collateral Agent" ........................................................16
1.94 "Trade Lien Order" .........................................................................16
1.95 "Trade Lien Vendor Program" .........................................................17
1.96 "Trade Program Agreement" ...........................................................17
1.97 "Ultra Shareholders' Agreement" ....................................................17
1.98 "Unimpaired" .................................................................................17
1.99 "United States Trustee" ...................................................................17
1.100 "Unpaid Consignor Claims Relating to Pre-
Effective Date Shipments" ............................................................17
1.101 "Unsecured Claim". .......................................................................17
1.102 "Unsecured Creditors Note" ..........................................................17
ARTICLE II CLASSIFICATION OF CLAIMS AND
INTERESTS ...................................................................................17
2.1 Unclassified Claims .........................................................................17
2.2 Classified Claims and Interests ........................................................18
2.3 Class Acceptance Requirements .......................................................18
ARTICLE III TREATMENT OF CLAIMS AND EQUITY
INTERESTS ...................................................................................19
3.1 Treatment of the DIP Claim .............................................................19
3.2 Payment of Administrative Expense Claims ......................................19
3.3 Pre-Petition First Lien Claim (Class 1) ............................................21
3.4 Secured Claims (Class 2) .................................................................21
3.5 Crystal Pre-Petition Term Loan Claim
(Class 3) .......................................................................................22
3.6 Convenience Claims (Class 4) ..........................................................23
3.7 Unsecured Claims (Class 5) .............................................................23
3.8 Intercompany Claims (Class 6) ........................................................23
3.9 Equity Interests in the Debtors (Class 7) ..........................................23
ARTICLE IV PROVISIONS REGARDING CORPORATE
GOVERNANCE AND MANAGEMENT OF
REORGANIZED ULTRA AND THE
ISSUANCE OF NEW ultRA STOCK ..............................................24
4.1 Board of Directors ...........................................................................24
4.2 Officers of Ultra ..............................................................................24
4.3 New Certificate of Incorporation and By
Laws ............................................................................................24
4.4 Securities to be Issued Pursuant to this Plan:
New Ultra Stock ...........................................................................24
4.5 Cancellation of Existing Equity Interests ..........................................25
4.6 The Ultra Shareholders Agreement ...................................................25

|  | 4.7 | Dissolution of Ultra Stores Puerto Rico, Inc, and Ultra Stores USVI, Inc. | 25 |
|  | 4.8 | Corporate Action | 25 |
| ARTICLE V | | MEANS OF DISTRIBUTION AND IMPLEMENTATION | 26 |
|  | 5.1 | Distribution Provisions | 26 |
|  | 5.2 | Plan Funding | 27 |
|  | 5.3 | The Management and Employee Incentive Plan | 27 |
|  | 5.4 | Post-Confirmation Intercreditor Agreements | 27 |
|  | 5.5 | Trade Lien Vendor Program | 28 |
|  | 5.6 | Consignors | 28 |
|  | 5.7 | Post-Confirmation BoA Loan Facility | 29 |
|  | 5.8 | Crystal Exit Loan Documents | 29 |
|  | 5.9 | Cancellation and Surrender of Existing Securities and Agreements | 29 |
|  | 5.10 | Aggregation of Claims | 29 |
|  | 5.11 | Compensation and Benefit Programs | 29 |
| ARTICLE VI | | RIGHTS AND OBLIGATIONS OF THE DISBURSING AGENT | 30 |
|  | 6.1 | Powers of the Disbursing Agent | 30 |
|  | 6.2 | Duties of the Disbursing Agent | 30 |
| ARTICLE VII | | PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER THE PLAN | 30 |
|  | 7.1 | Disputed Claims | 30 |
|  | 7.2 | No Distributions Pending Allowance | 31 |
|  | 7.3 | Distributions After Allowance | 31 |
|  | 7.4 | Voting Rights of Holders of Disputed Claims | 31 |
| ARTICLE VIII | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 31 |
|  | 8.1 | Assumed If Not Rejected | 31 |
|  | 8.2 | Objection to Assumption | 32 |
| ARTICLE IX | | SUBSTANTIVE CONSOLIDATION | 33 |
|  | 9.1 | Substantive Consolidation. | 33 |
| ARTICLE X | | CONDITIONS PRECEDENT | 33 |
|  | 10.1 | Conditions Precedent to Effective Date | 33 |
|  | 10.2 | Waiver of Conditions Precedent to Effective Date | 34 |
|  | 10.3 | Effect of Failure of Conditions | 34 |
| ARTICLE XI | | EFFECT OF CONFIRMATION OF THIS PLAN | 35 |
|  | 11.1 | Continued Corporate Existence | 35 |
|  | 11.2 | Vesting of Assets | 35 |
|  | 11.3 | Discharge of the Debtors | 35 |
|  | 11.4 | Injunction | 36 |

HF 4795871v.15 #13998/0002

11.5    Extinguishment of Causes of Action Under
the Avoiding Power Provisions ........................................37
11.6    Votes Solicited in Good Faith........................................37
11.7    Releases and Related Matters ........................................38
11.8    Exculpation and Limitation of Liability ........................39
11.9    Term of Bankruptcy Injunction or Stays ......................40
11.10  Preservation of Insurance........................................40
11.11  Officers' and Directors' Indemnification
Rights and Insurance........................................40
ARTICLE XII RETENTION OF JURISDICTION ........................41
12.1    Scope of Jurisdiction........................................41
ARTICLE XIII MISCELLANEOUS PROVISIONS ........................42
13.1    Creditors' Committee........................................42
13.2    Compliance with Tax Requirements ..............................43
13.3    Payment of Statutory Fees ........................................43
13.4    Pre-Confirmation Modification ........................43
13.5    Post-Confirmation Immaterial Modifications....................43
13.6    Revocation or Withdrawal of Plan.................................43
13.7    Governing Law ........................................43
13.8    Withholding and Reporting Requirements ......................44
13.9    Notices ........................................44
13.10  Post-Confirmation Date Service List .............................45
13.11  Exemption From Certain Transfer Taxes ......................45
13.12  Filing or Execution of Additional
Documents ........................................45
13.13  Section 1145 Exemption ........................................45

HF 4795871v.15 #13998/0002

Ultra Stores, Inc., Ultra Stores Puerto Rico, Inc. and Ultra Stores USVI, Inc. ("Ultra" or the "Debtors"), debtors and debtors-in-possession in the above-referenced chapter 11 cases, hereby propose the following joint consolidated plan of reorganization dated May 11, 2009 pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"). The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I
## DEFINITIONS AND RULES OF INTERPRETATION

Unless the context otherwise requires, the following terms have the following meanings when used in their capitalized forms in this Plan. Such meanings are equally applicable to both the singular and plural forms of the terms. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Plan as a whole, including its exhibits, and not to any particular section, subsection, clause or exhibit of this Plan, unless expressly provided otherwise. Whenever it appears appropriate from the context, terms stated in either the singular or the plural include the plural or the singular of the term as the case may be, and terms stated in the masculine, feminine or neuter gender include all genders. Captions and headings to articles, sections, subsections and exhibits are inserted for convenience of reference only, and shall not be used to interpret this Plan. The rules of construction set forth in section 102 of the Bankruptcy Code apply. In computing any period of time prescribed or allowed by this Plan, Bankruptcy Rule 9006(a) applies. Any capitalized term used in this Plan which is not defined herein, but which is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    "Ad Hoc Committee" shall mean the unofficial committee of twelve of the Debtors' unsecured and consignment vendor creditors that was formed prior to the Petition Date.

1.2    "Administrative Expense Claim" shall mean a Claim for a cost or expense of administration of the Chapter 11 Cases allowable under section 503(b) of the Bankruptcy Code, and referred to in section 507(a)(2) of the Bankruptcy Code, including: (a) the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Cases of preserving the Estates and operating the business of the Debtors including wages, salaries or commissions for services rendered after the commencement of the Cases; (b) Professional Fee Claims; (c) any Claim granted administrative priority pursuant to a Final Order of the Bankruptcy Court; and (d) all fees and charges of the United States Trustee assessed against the Estates of the Debtors under chapter 123 of title 28, United States Code. The term "Administrative Expense Claim" shall not include the DIP Claim.

1.3    "Administrative Expense Claim Bar Date" shall mean the date by which proofs of claim or applications for payment of Administrative Expense Claims (other than claims of Professional Persons retained in these Chapter 11 Cases) must be filed with the Bankruptcy Court, as shall be determined by the Bankruptcy Court pursuant to a motion setting such bar date to be filed by the Debtors.

1.4 "Affiliate" shall have the meaning ascribed to such term under section 101(2) of the Bankruptcy Code.

1.5 "Allowed" shall mean a Claim or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the Effective Date or the expiration of such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court; (b) as to which any objection to its allowance has been settled, waived through payment or withdrawn, or has been denied by a Final Order; (c) that has been allowed by a Final Order; (d) as to which the liability of the Debtors, or any of them, and the amount thereof are determined by final order of a court of competent jurisdiction other than the Bankruptcy Court; or (e) that is expressly allowed in a liquidated amount in this Plan or otherwise allowed in this Plan. The Term "Allowed" shall not, for purposes of computing distributions under this Plan, include interest on such Claim from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code or as otherwise expressly set forth in this Plan.

1.6 "Avoidance Actions" shall mean Causes of Action arising under sections 502, 510, 544, 545, 547, 548, 550, 551 or 553(b) of the Bankruptcy Code, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such Causes of Action.

1.7 "Ballot" shall mean the forms mailed to holders of Claims in Classes 3, 4 and 5 that are impaired under the terms of the Plan and are entitled to vote to accept or reject this Plan.

1.8 "Balloting Agent" shall mean the Debtors, or their agent Kurtzman Carson Consultants LLC.

1.9 "Bankruptcy Code" shall mean title 11 of the United States Code, as in effect on the Petition Date or thereafter amended and applicable to the Chapter 11 Cases.

1.10 "Bankruptcy Court" shall mean the Bankruptcy Court unit of the United States District Court for the Southern District of New York or such other court having jurisdiction over the Chapter 11 Cases of the Debtors.

1.11 "Bankruptcy Rules" shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended and as applicable to the Chapter 11 Cases or proceedings therein, as the case may be, and the local rules of the Bankruptcy Court, as in effect on the Petition Date or thereafter amended.

1.12 "Bar Date" shall mean June 12, 2009 the date fixed by order of the Bankruptcy Court by which a proof of Claim against each or all of the Debtors must have been filed.

HF 4795871v.15 #13998/0002

1.13    "BoA" shall mean Bank of America, N.A., including in its capacities as DIP Agent, Pre-Petition First Lien Agent, DIP Secured Party and Pre-Petition First Lien Secured Party, and its affiliates.

1.14    "Business Day" shall mean any day except Saturday, Sunday or legal holiday as such term is defined in Bankruptcy Rule 9006.

1.15    "Cash" means cash and cash equivalents, including but not limited to bank and other deposits, wire transfers, checks and other similar items.

1.16    "Causes of Action" shall mean any and all claims, actions, proceedings, causes of action, Avoidance Actions, suites, accounts, controversies, agreements, promises, rights of action, rights to legal remedies, rights to equitable remedies, rights to payment and Claims, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether asserted or assertable directly or derivatively, in law, equity or otherwise, that any Debtor and/or Estate may hold against any Person, but excluding those related, exculpated or waived pursuant to the Plan, the Confirmation Order and the Final DIP Order.

1.17    "Certificate of Incorporation" shall mean, collectively, (i) the Certificate of Incorporation of Reorganized Ultra, and (ii) the by-laws of Reorganized Ultra, substantially in the forms to be filed as supplements to the Plan prior to the deadline for voting to accept or reject the Plan.

1.18    "Challenge" shall have the meaning ascribed to such term in the Final DIP Order.

1.19    "Challenge Period" shall have the meaning ascribed to such term in the Final DIP Order.

1.20    "Chapter 11 Cases" or "Cases" shall mean (a) when used with reference to a particular Debtor, the case under chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

1.21    "Claim" or "Claims" shall have the meaning set forth in section 101(5) of the Bankruptcy Code, including, without limitation, any right to receive payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right to receive payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, and whether arising before or after the Petition Date.

1.22    "Claimant" shall mean a Person who holds a Claim.

HF 4795871v.15 #13998/0002

1.23    "Class" shall mean one of the classifications established under Article III of this Plan pursuant to section 1122 of the Bankruptcy Code and used to identify Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests in such classification.

1.24    "Confirmation Date" shall mean the date upon which the Bankruptcy Court enters an order on the docket of the Chapter 11 Cases confirming this Plan in accordance with section 1129 of the Bankruptcy Code.

1.25    "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court, as it may be continued from time to time, at which the Debtors shall seek confirmation of this Plan.

1.26    "Confirmation Order" shall mean the order of the Bankruptcy Court entered on the docket of the Chapter 11 Cases confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which order is in form and substance reasonably satisfactory to BoA, Crystal and the Creditors' Committee.

1.27    "Code" shall mean the Bankruptcy Code.

1.28    "Consigned Goods" shall mean the goods delivered to the Debtors by a Consignor under or pursuant to a Consignment Agreement.

1.29    "Consignors" shall mean the trade vendors who deliver merchandise to the Debtors pursuant to Consignment Agreements.

1.30    "Consignment Agreements" shall mean the respective agreements between the Debtors and Consignors pursuant to which the Consignors deliver goods to the Debtors under or pursuant to a consignment memorandum or similar documentation identifying such goods as "consignment" or "memo" and using words of similar import in the retail jewelry industry indicating a consignment arrangement.

1.31    "Consignment Order" shall mean the Final Order of the Bankruptcy Court [Docket No. 95] dated April 28, 2009, as altered, amended, modified or supplemented from time to time, inter alia, authorizing and directing the Debtors to pay their Consignors pursuant to the terms of their respective Consignment Agreements with the Debtors.

1.32    "Convenience Claims" shall mean those Allowed Unsecured Claims: (i) of $3,000 or less; and (ii) of greater than $3,000 but which a holder thereof in Class 5 has elected, by so indicating on its Ballot, to have its Claim reduced to $3,000. Any Claimant who elects to have its Claim treated as a Convenience Claim shall be deemed to have voted the full Allowed amount of its Claim in Class 5 to accept the Plan.

1.33    "Creditors' Committee" shall mean the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases pursuant to section 1102 of the

Bankruptcy Code, as the same may be reconstituted from time to time through and including the Effective Date.

1.34 "Creditors' Committee Counsel" shall mean Moses & Singer LLP.

1.35 "Crystal" shall mean, collectively, Crystal Capital Fund, L.P., Crystal Capital Fund, Ltd. and Crystal Capital Fund Management, L.P.

1.36 "Crystal Exit Loan Documents" shall mean the Crystal Exit Note and related term loan credit and security agreements, each in a form satisfactory to Crystal and substantially in the form to be filed as a supplement to the Plan prior to the deadline for voting to accept or reject the Plan, and such other ancillary documents as may be executed or delivered in connection therewith, or for the purpose of, effectuating the Crystal Exit Note, each in a form satisfactory to Crystal.

1.37 "Crystal Exit Note" shall mean the secured term loan note substantially in the form to be filed as a supplement to the Plan prior to the deadline for voting to accept or reject the Plan.

1.38 "Crystal Pre-Petition Term Loan Claim" shall mean the Secured Claim of Crystal arising under the Crystal Term Loan Documents, as Allowed pursuant to Section 3.5 of this Plan.

1.39 "Crystal Term Loan Documents" shall mean, collectively, (i) the Crystal Term Loan Documents, dated as of April 30, 2007 (as amended or modified), by and among the Debtors, Crystal Capital Fund Management, L.P., as administrative and collateral agent, and the lenders party thereto, and (ii) all other agreements, documents and instruments entered into, delivered in connection with or otherwise evidencing or securing obligations arising under the Agreement described in clause (i).

1.40 "Debtors" or "Debtors in Possession" shall have the meaning set forth in the introduction to the Plan.

1.41 "Debtors' Counsel" shall mean Herrick, Feinstein LLP.

1.42 "DIP Agent" shall have the meaning ascribed to such term in the Final DIP Order.

1.43 "DIP Claim" means the Claims of the DIP Secured Parties arising under the DIP Financing Agreements and includes the DIP Obligations.

1.44 "DIP Credit Agreement" shall have the meaning ascribed to such term in the Final DIP Order.

1.45 "DIP Facility" shall have the meaning ascribed to such term in the Final DIP Order.

HF 4795871v.15 #13998/0002

1.46    "DIP Financing Agreements" shall have the meaning ascribed to such term in the Final DIP Order.

1.47    "DIP Obligations" shall have the meaning ascribed to such term in the Final DIP Order.

1.48    "DIP Secured Parties" shall have the meaning ascribed to such term in the Final DIP Order.

1.49    "Disallowed Claim" shall mean a Claim (other than the DIP Claim, the Pre-Petition First Lien Claim, and the Crystal Pre-Petition Term Loan Claim), or any portion thereof, that (a) has been disallowed by a Final Order, (b) is scheduled at zero or as contingent, disputed or unliquidated and as to which no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, or (c) is not Scheduled and as to which (i) no Proof of Claim has been filed by the applicable Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order, or (ii) no Administrative Expense Claim has been filed by the Administrative Expense Claim Bar Date or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order or under applicable law.

1.50    "Disbursing Agent" shall mean the Debtors, or their agent Kurtzman Carson Consultants LLC.

1.51    "Disclosure Statement" shall mean the disclosure statement (including all exhibits and schedules thereto) relating to this Plan and approved in accordance with section 1125 of the Bankruptcy Code by a Final Order.

1.52    "Disputed" when used: (a) with respect to a Claim or Interest, shall mean the portion (including where appropriate, the whole) of any Claim or Interest which is scheduled by the Debtors as disputed, contingent or unliquidated and has not been Allowed, or which scheduled Claim is the subject of a Claims objection motion which has not been determined as Allowed or Disallowed by a Final Order; or a Claim or Interest which has been filed pursuant to section 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been filed with the Bankruptcy Court, whether by separate motion or as part of this Plan, within the time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, this Plan or an order of the Bankruptcy Court, which Claim or Interest has not been determined as Allowed or Disallowed, by a Final Order, or (b) with respect to an Administrative Expense Claim, shall mean the portion (including where appropriate the whole) of an Administrative Expense Claim for which an objection to the allowance thereof has been interposed, by separate motion or as part of this Plan, within the time limitation fixed by the Bankruptcy Code, Bankruptcy Rules, this Plan or an order of the Bankruptcy Court, which Administrative Expense Claim has not been determined as Allowed or Disallowed by a Final Order.

HF 4795871v.15 #13998/0002

1.53    "Distribution(s)" shall mean a payment of Cash and/or any other distributions of property made to holders of Allowed Claims pursuant to this Plan.

1.54    "Effective Date" shall mean the date on which all of the conditions precedent set forth in Section 10.1 of this Plan have been satisfied or waived as provided in Section 10.2 of this Plan; provided that such date shall be no earlier than the tenth day after the Confirmation Date.

1.55    "Employment Agreements" shall mean the agreements substantially in the form to be filed as a supplement to the Plan prior to the deadline for voting whether to accept or reject the Plan.

1.56    "Entity" shall have the meaning set forth in section 101(15) the Bankruptcy Code and includes, without limitation, any Person, estate, trust, or governmental unit, and the United States Trustee.

1.57    "Equity Interest" shall mean the legal, equitable, contractual or other rights of any Person with respect to any capital stock or other ownership interest in any Debtor, whether or not transferable, and any option, warrant or right to purchase, sell, subscribe for, or otherwise acquire or receive an ownership interest or other equity security in any Debtor.

1.58    "Estate(s)" shall mean the estate(s) of the Debtor(s) created pursuant to section 541 of the Bankruptcy Code upon the commencement of the(se) Chapter 11 Case(s).

1.59    "Final DIP Order" shall mean the Final Order entered by the Bankruptcy Court on April 29, 2009 [Docket No. 97] approving the DIP Facility and the agreements related thereto on a final basis.

1.60    "Final Order" shall mean an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Chapter 11 Cases, or the docket of any such other court, the operation or effect of which has not been stayed, reversed, or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) the time to appeal or seek review or rehearing or leave to appeal has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, no appeal or petition for review or rehearing remains pending; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order or judgment shall not cause such order or judgment not to be a Final Order.

1.61    "General Unsecured Claim" shall have the same meaning as Unsecured Claim.

1.62    "Impaired" shall have the meaning ascribed by section 1124 of the Bankruptcy Code.

1.63　"Indemnification Obligation" means any obligation of any of the Debtors to indemnify, reimburse, or provide contribution to any present or former officer, director or employee pursuant to by-laws, articles of incorporation, contract, or otherwise as may be in existence immediately prior to the Petition Date.

1.64　"Intercompany Claim" means a claim of one Debtor against another Debtor.

1.65　"Interest" shall have the same meaning as Equity Interest.

1.66　"Lien" shall mean any lien, security interest, pledge, title retention agreement, encumbrance, charge, mortgage or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

1.67　"Management and Employee Incentive Plan" shall mean the post-Effective Date management equity incentive plan, substantially in the form to be filed as a supplement to the Plan prior to the deadline for voting to accept or reject the Plan, to be implemented by Reorganized Ultra pursuant to Section 5.3 of the Plan.

1.68　"New Ultra Stock" shall mean all authorized shares of fully-paid non-assessable preferred and/or common stock, par value $.01 per share, authorized under the Certificate of Incorporation and which shall include those shares to be issued or reserved for issuance pursuant to or in connection with the Plan.

1.69　"Person" shall have the meaning ascribed to such term under section 101(41) of the Bankruptcy Code.

1.70　"Petition Date" shall mean April 9, 2009, the date upon which the Debtors commenced their respective Chapter 11 Cases.

1.71　"Plan" shall mean this joint consolidated plan and all exhibits and supplements hereto, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules.

1.72　"Plan Documents" shall mean all documents, including without limitation, all agreements and orders necessary to effectuate this Plan including but not limited to the Disclosure Statement, and the documents attached as exhibits to the Plan, and the Disclosure Statement.

1.73　"Post-Confirmation BoA Loan Documents" means the credit agreement, in a form satisfactory to BoA, substantially in the form annexed as Schedule 1.73 to the Plan, providing for exit financing on the terms set forth therein, and all documents, agreements and instruments, including intercreditor, subordination and security agreements, executed in connection therewith, each in a form satisfactory to BoA.

1.74 "Post-Confirmation BoA Loan Facility" shall mean the lending facility contemplated by the Post-Confirmation BoA Loan Documents.

1.75 "Post-Confirmation Intercreditor Agreements" shall mean, collectively, the one or more agreements, substantially in the form to be filed as a supplement to the Plan prior to the deadline for voting whether to accept or reject the Plan, setting forth the respective rights and priorities as between BoA, Crystal, creditors participating under the Trade Lien Vendor Program, and creditors under Class 5, and the subordination agreement in respect of the Unsecured Creditors Note.

1.76 "Post-Petition" means a date on and after the Petition Date.

1.77 "Pre-Effective Date Consigned Goods" shall have the meaning ascribed to such term in Section 5.6 of this Plan.

1.78 "Pre-Petition" means a date prior to the Petition Date.

1.79 "Pre-Petition First Lien Agent" shall have the meaning ascribed to such term in the Final DIP Order.

1.80 "Pre-Petition First Lien Agreements" shall have the meaning ascribed to such term in the Final DIP Order.

1.81 "Pre-Petition First Lien Claim" shall mean the Claims of the Pre-Petition Secured Parties arising under the Pre-Petition First Lien Agreements and includes the Pre-Petition First Lien Debt.

1.82 "Pre-Petition First Lien Debt" shall have the meaning ascribed to such term in the Final DIP Order.

1.83 "Pre-Petition First Lien Secured Parties" shall have the meaning ascribed to such term in the Final DIP Order.

1.84 "Priority Non-Tax Claim" shall mean a Claim which is entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

1.85 "Priority Tax Claim" shall mean a Claim of a governmental unit of the kind specified in section 502(i), 507(a)(8) or 1129(a)(9)(D) of the Bankruptcy Code.

1.86 "Professional Fee Claim" shall mean those fees and expenses claimed by a Professional Person pursuant to sections 330, 331 or 503 of the Bankruptcy Code, and unpaid as of the Confirmation Date, but not including any subrogation or contribution Claim arising from any Person's payment of any fees and expenses to a Professional Person.

1.87 "Professional Person" shall mean (a) a Person employed pursuant to an order of the Bankruptcy Court in accordance with sections 327, 328, or 1103 of the

Bankruptcy Code or otherwise and to be compensated for services rendered prior to the Effective Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

1.88    "Pro Rata" or "Pro Rata Share" shall mean the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Claims in such Class, including Disputed Claims, but not including Disallowed Claims, as calculated by the Debtors prior to the Effective Date. Pro Rata or Pro Rata Share shall mean, when used in Section 3.7 of the Plan, the percentage amount that is equal to a fraction, the numerator of which is the amount of an Allowed Claim of a Holder of a General Unsecured Claim, and the denominator of which is the aggregate amount of all allowed General Unsecured Claims.

1.89    "Reorganized Ultra" shall mean the Ultra Stores, Inc., as reorganized, on and after the Effective Date.

1.90    "Schedules" shall mean the schedules of assets and liabilities, the list of holders of Equity Interests, and the statement of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and the Bankruptcy Rules, as the same may have been or may be amended or modified.

1.91    "Secured Claim" shall mean a Claim (other than the DIP Claim, the Pre-Petition First Lien Claim, the Crystal Pre-Petition Term Loan Claim, the Claims secured by the Trade Lien, and the Claims of Consignors) that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which an Estate has an interest, or a claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtors or Reorganized Ultra and the holder of such Claim. The amount of any Claim that exceeds the value of the holder's interest in the Estate's interest in property or the amount subject to setoff shall be treated as a General Unsecured Claim.

1.92    "Trade Lien" shall mean the lien granted in favor of the Trade Lien Collateral Agent pursuant to the Trade Lien Order and the Trade Program Agreement.

1.93    "Trade Lien Collateral Agent" shall mean the collateral agent under the Trade Program Agreement.

1.94    "Trade Lien Order" shall mean the order entered by the Bankruptcy Court on April 29, 2009 [Docket No. 96], as altered, amended, modified or supplemented

from time to time, which, inter alia, approved the Trade Lien Vendor Program and the Trade Program Agreement.

1.95 "Trade Lien Vendor Program" shall mean the trade lien program approved and implemented pursuant to the Trade Lien Order and the Trade Program Agreement.

1.96 "Trade Program Agreement" shall mean the Trade Program and Security Agreement by and among the Debtors and the Trade Lien Collateral Agent, entered into pursuant to the Trade Lien Order.

1.97 "Ultra Shareholders' Agreement" shall mean the agreement substantially in the form to be filed as a supplement to the Plan prior to the deadline for voting whether to accept or reject the Plan which will govern the rights of holders of 5% or more of New Ultra Stock.

1.98 "Unimpaired" shall mean with respect to a Claim, Class, or Equity Interest, a Claim, Class or Equity Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

1.99 "United States Trustee" shall mean the Office of the United States Trustee for the Southern District of New York.

1.100 "Unpaid Consignor Claims Relating to Pre-Effective Date Shipments" shall have the meaning ascribed to such term in Section 5.6 of this Plan.

1.101 "Unsecured Claim" shall mean a Claim other than a Professional Fee Claim, Administrative Expense Claim, Convenience Claim, Priority Non-Tax Claim, Priority Tax Claim, Secured Claim, the DIP Claim, the Pre-Petition First Lien Claim, the Crystal Pre-Petition Term Loan Claim, and Allowed Claims of Consignors.

1.102 "Unsecured Creditors Note" shall mean the non-negotiable note in the aggregate amount of $3,000,000 substantially in the form annexed as Exhibit A to the Plan.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 Unclassified Claims

The DIP Claim, Administrative Expense Claims, Professional Fee Claims, Priority Non-Tax Claims, and Priority Tax Claims have not been classified in accordance with section 1123(a)(1) of the Bankruptcy Code. The respective treatment of such unclassified claims is set forth in Sections 3.1 and 3.2 of the Plan.

17

2.2 Classified Claims and Interests

The Plan provides for the following Classes of Claims and Interests:

(a)     Class 1 – Pre-Petition First Lien Claim.

This Class consists of the Pre-Petition First Lien Claim. This Class is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

(b)     Class 2 - Secured Claims

This Class consists of the Secured Claims. This Class is not impaired within the meaning of section 1124 of the Bankruptcy Code.

(c)     Class 3 - Crystal Pre-Petition Term Loan Claim

This Class consists of the Crystal Pre-Petition Term Loan Claim. This Class is impaired within the meaning of section 1124 of the Bankruptcy Code.

(d)     Class 4 - Convenience Claims

This Class consists of the Convenience Claims, including all Unsecured Claims the holders of which otherwise would have Class 5 Claims but have elected to have their Claims treated as Convenience Claims. This Class is impaired within the meaning of section 1124 of the Bankruptcy Code.

(e)     Class 5 - Unsecured Claims

This Class consists of the Unsecured Claims not included in any other Class. This Class is impaired within the meaning of section 1124 of the Bankruptcy Code.

(f)     Class 6 - Intercompany Claims

This Class consists of the Intercompany Claims. This Class is impaired within the meaning of section 1124 of the Bankruptcy Code and is deemed to have rejected the Plan since it will not receive any distribution under the Plan.

(g)     Class 7 - Equity Interests

This Class consists of the Debtors' Equity Interests. This Class is impaired within the meaning of section 1124 of the Bankruptcy Code, and is deemed to have rejected the Plan since it will not receive any distributions under the Plan.

2.3 Class Acceptance Requirements

Class 3 (Crystal Pre-Petition Term Loan Claim), Class 4 (Convenience Claims), and Class 5 (Unsecured Claims) shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims in each such Class that actually have submitted votes on the Plan

in accordance with the requirements of any order of the Bankruptcy Court applicable thereto.

**ARTICLE III**
**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**Unclassified Claims**

3.1     <u>Treatment of the DIP Claim</u>

As of the Effective Date, the DIP Claim shall be paid in full from the proceeds of the Post-Confirmation BoA Loan Facility, and BoA shall obtain the benefit of the releases, exculpations and injunctions contained in Article XI of the Plan.

3.2     <u>Payment of Administrative Expense Claims</u>

(a)     Administrative Expense Claims in General

Except as specified in this Section 3.2, and unless less favorable treatment is otherwise agreed to in writing by the holder of an Administrative Expense Claim and the Debtors or Reorganized Ultra, each holder of an Allowed Administrative Expense Claim will receive, in full satisfaction, settlement, release and discharge of its Administrative Expense Claim, Cash equal to the amount of such Allowed Administrative Expense Claim either (i) on the Effective Date or as soon thereafter as reasonably practicable or (ii) if the Administrative Expense Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which an order allowing such Administrative Expense Claim becomes a Final Order.

Proofs of claim or applications for payment of Administrative Expense Claims (other than claims of Professional Persons retained in these Chapter 11 Cases and Claims covered by Section 3.2(b) below) must be filed with the Court, with copies to the parties listed in Section 13.9 of the Plan on or before the Administrative Expense Claim Bar Date. Any person that fails to file such a proof of claim or application with the Court within that time frame shall be forever barred from asserting such an Administrative Expense Claim, including, without limitation, against any of the Debtors, their Estates, Reorganized Ultra or their property, or commencing or continuing any action, employment of process, or act to collect, offset, or recover any such Administrative Expense Claim.

(b)     Ordinary Course Liabilities

Administrative Expense Claims based on liabilities incurred by a Debtor in the ordinary course of business will be paid by Reorganized Ultra pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed Administrative Expense Claims; <u>provided</u>, <u>however</u>, that in no event shall a post-petition obligation that is contingent or disputed and subject to liquidation through pending or prospective litigation, including, but not limited to, alleged obligations arising from personal injury, property damage, products

liability, consumer complaints, employment law, secondary payor liability, or any other disputed legal or equitable claim based on tort, statute, contract, equity, or common law, be considered to be an obligation which is payable in the ordinary course of business.

(c)     Professional Fee Claims

(i)     All final requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court and served on Reorganized Ultra no later than thirty (30) days after the Effective Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, the allowed amounts of such Professional Fee Claims shall be determined by the Bankruptcy Court.

(ii)     Subject to any holdback amount, on the Effective Date, the Debtors or Reorganized Ultra shall pay all amounts owing to Professional Persons for all outstanding amounts payable relating to prior periods through the Effective Date. To receive payment on the Effective Date for unbilled fees and expenses incurred through such date, the Professional Persons shall reasonably estimate fees and expenses due for periods that will not have been billed as of the Effective Date and shall deliver such estimate to the Debtors and the United States Trustee prior to the Effective Date. The Debtors or Reorganized Ultra, as applicable, shall pay the Professional Person's reasonably estimated amount of such fees and expenses as soon as reasonably practicable after receiving the estimate, but in no event prior to the Effective Date. Within thirty (30) days after the Effective Date, a Professional Person receiving payment for the estimated period shall submit a detailed invoice covering such period in the manner and providing the details as set forth in the Professional Fee Order. If the estimated payment received by any Professional Person exceeds the actual fees and expenses for such period, as ultimately approved by the Bankruptcy Court in connection with the relevant final fee application, such excess amount will be credited against the holdback amount for such Professional Person or, if the award of the holdback amount for such matter is insufficient, disgorged by such Professional Person within 30 days after the issuance of the Order approving the relevant final fee application. If the estimated payment received by any Professional Person is lower than the actual fees and expenses for such period as ultimately approved by the Bankruptcy Court in connection with the relevant final fee application, the difference between the amount approved and the estimated payment shall promptly be paid to such Professional Person.

(d)     Priority Tax Claims

Except to the extent that an Allowed Priority Tax Claim has been paid prior to the Effective Date, each holder of an Allowed Priority Tax Claim shall be entitled to receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim, as shall have been determined by the Debtors (i) on the Effective Date, Cash equal to the unpaid portion of such

Allowed Priority Tax Claim, or (ii) such other less favorable treatment as to which the Debtors or Reorganized Ultra and such holder shall have agreed upon in writing. If and to the extent the aggregate amount of Allowed Priority Tax Claims exceeds amounts initially deposited in an applicable reserve for the payment of such Claims, Allowed Priority Tax Claims will be paid from the assets of Reorganized Ultra.

(e)     Priority Non-Tax Claims

On, or as soon as reasonably practicable after the later of (a) the Effective Date, (b) the date of any Distribution immediately following the date on which an Allowed Priority Non-Tax Claim becomes payable pursuant to any agreement between a Debtor and the holder of such Priority Non-Tax Claim or (c) the date on which an Allowed Priority Non-Tax Claim becomes payable pursuant to and as specified by a court order, the holder of such Allowed Priority Non-Tax Claim shall receive, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim, either (i) Cash equal to the unpaid portion of the face amount of such Allowed Priority Non-Tax Claim or (ii) such other less favorable treatment as to which the Debtors or Reorganized Ultra and such holder shall have agreed upon in writing.

**Classified Claims**

3.3     Pre-Petition First Lien Claim (Class 1)

On the Effective Date, BoA shall receive the following in full satisfaction of the Pre-Petition First Lien Claim: (i) the payments made on account of the Pre-Petition First Lien Claim in accordance with the Final DIP Order (and the preceding interim orders) shall be deemed indefeasibly and irrevocably paid and shall not be subject to disgorgement; (ii) the Challenge Period, to the extent not already terminated, shall terminate without further order or action; (iii) any Challenge brought against BoA shall be deemed released and dismissed with prejudice without further order or action; and (iv) the benefit of the releases, exculpations and injunctions contained in Article XI of the Plan.

3.4     Secured Claims (Class 2)

In full satisfaction, settlement, release and discharge of the Debtors' Pre-Petition obligations to each holder of an Allowed Class 2 Secured Claim, on the Effective Date, each holder of an Allowed Secured Claim shall receive at the Debtors' option and to the extent such Claim is secured by collateral in the possession of the Debtors as of the Effective Date (i) 100% of the Allowed Secured Claim; (ii) the return of the relevant collateral; (iii) such treatment that leaves unaltered the legal, equitable and contractual rights of the holder of such Allowed Secured Claim; or (iv) such less favorable treatment as the Debtors and the holder of such Secured Claim may agree upon.

HF 4795871v.15 #13998/0002

### 3.5 Crystal Pre-Petition Term Loan Claim (Class 3)

On the Effective Date, the Crystal Pre-Petition Term Loan Claim shall be deemed Allowed in the aggregate amount of $16,092,809.76 for all purposes of the Plan and the Chapter 11 Cases (which amount is comprised of $15,191,002.00 in outstanding principal, $766,102.21 in accrued and unpaid interest, and $135,705.55 in attorneys' fees, relating to the period up to but not including the Petition Date). In full satisfaction, settlement, release and discharge of the Crystal Pre-Petition Term Loan Claim, on the Effective Date: (i) the Crystal Exit Note and all Crystal Exit Loan Documents shall have been executed and delivered to Crystal, (ii) the holder of the Crystal Pre-Petition Term Loan Claim shall receive shares of fully paid non-assessable New Ultra Stock, representing 56% of the equity of Reorganized Ultra on a fully diluted basis, (iii) the Challenge Period, to the extent not already terminated, shall terminate without further order or action, and (iv) Crystal shall receive the benefit of the releases, exculpations and injunctions contained in Article XI of the Plan. In addition, Crystal shall receive payment of post-petition legal fees and expenses as provided in the Final DIP Order and Crystal's consent thereto, and any such fees and expenses that are unpaid as of the Effective Date shall be paid on the Effective Date.

The Crystal Exit Note and the Crystal Exit Loan Documents shall contain the following terms and such other terms and conditions acceptable to Crystal:

| | |
|---|---|
| *Note Amount* | $7,500,000 plus all accrued and unpaid interest, fees, and expenses (including accrued and unpaid legal fees and expenses) for the period up to but not including the Petition Date. |
| *Interest Rate* | LIBOR plus 9.00% per annum (floor of 12.0% per annum), paid in kind (PIK) quarterly. |
| *Maturity* | September 30, 2012 |
| *Amortization* | Commencing with the receipt of Reorganized Ultra's financial statement for the fiscal year end 01/31/10, and, so long as the Payment Conditions (as defined on Schedule 1.73 hereto) are met, 65.00% of Excess Cash Flow shall be paid and applied to the outstanding principal balance of the Crystal Exit Note. *"Excess Cash Flow"* shall be defined as EBITDA less the sum of all Capital Expenditures paid in cash, cash taxes, cash principal payments, cash interest payments, and cash payments made under capital leases (without duplication). |
| *Covenants* | There will be no financial covenants. |
| *Security* | All or substantially all of the assets of Reorganized Ultra, subject only to the liens of the Post-Confirmation BoA Loan Facility and the Trade Lien Vendor Program. |

| Subordination | The lien securing the Crystal Exit Note shall be subject to lien subordination (but not payment subordination) pursuant to the Post-Confirmation Intercreditor Agreements, provided that no payments shall be paid in respect of the Crystal Exit Note except as provided in Schedule 1.73 attached hereto. |
|---|---|

3.6    Convenience Claims (Class 4)

In full satisfaction, settlement, release and discharge of the Debtors' Pre-Petition obligations to each holder of an Allowed Class 4 Convenience Claim, on the Effective Date, each holder of an allowed Convenience Claim and each Class 5 Claimant who elects to receive Convenience Claim treatment shall receive payment in Cash equal to 50% of its Allowed Convenience Claim. In the event that the total amount of Convenience Claims exceeds the aggregate amount of $185,000, then each holder of a Convenience Claim shall receive a distribution in Cash equal to its Pro Rata Share of $92,500.00.

3.7    Unsecured Claims (Class 5)

In full satisfaction, settlement, release and discharge of the Debtors' Pre-Petition obligations to each holder of an Allowed Class 5 Unsecured Claim, on the later of (i) the Effective Date, and (ii) the date that is 30 days (or as soon as practicable) subsequent to the date when the total amount of Allowed Unsecured Claims is determined, each holder of an Allowed Class 5 Unsecured Claim shall receive (x) an Unsecured Creditors Note in an amount equal to such holder's Pro Rata Share of $3,000,000, and (y) a Pro Rata Share of fully-paid, non-assessable New Ultra Stock, representing, in the aggregate, 18% of the equity of Reorganized Ultra on a fully diluted basis.

The delivery of a Class 5 Unsecured Claimant's Pro Rata Share of New Ultra Stock to a holder of more than 5% of the New Ultra Stock shall be conditioned upon the holder of such Class 5 Unsecured Claim having executed the Ultra Shareholders' Agreement, and such holder of more than 5% of the New Ultra Stock shall be subject to the terms of the Ultra Shareholders' Agreement.

3.8    Intercompany Claims (Class 6)

Holders of Intercompany Claims shall receive no Distributions under the Plan and shall be deemed to have rejected the Plan.

3.9    Equity Interests in the Debtors (Class 7)

On the Effective Date, Equity Interests in the Debtors shall be cancelled and the holders thereof shall receive no Distributions under this Plan on account of such Equity Interests and all holders of same shall be deemed to have rejected this Plan.

HF 4795871v.15 #13998/0002

## ARTICLE IV
## PROVISIONS REGARDING CORPORATE GOVERNANCE
## AND MANAGEMENT OF REORGANIZED ULTRA
## AND THE ISSUANCE OF NEW ULTRA STOCK

4.1     Board of Directors

Reorganized Ultra shall have a five (5) member board of directors, two (2) members of which shall be appointed by Reorganized Ultra, and three (3) members of which shall be appointed by Crystal. In furtherance thereof, on the Effective Date, the board of directors of Reorganized Ultra shall consist of Daniel Marks, Joseph Donaghy, Michael L. Pizette, Ward Mooney and a director to be appointed by Crystal on or before the Effective Date. The Debtors' current boards of directors shall continue to serve until the Effective Date, at which time each member of the current board shall be deemed to have resigned from the board.

4.2     Officers of Ultra

On the Effective Date, the executive officers of Reorganized Ultra (and the terms of their compensation) will be Daniel Marks and Joseph Donaghy, each of whom shall serve (a) in accordance with the Employment Agreements, where applicable, or pursuant to written agreements as otherwise executed and approved by the board of directors of Reorganized Ultra, or, (b) with respect to any officer who does not have an employment agreement, at the pleasure of the board of directors of Reorganized Ultra.

4.3     New Certificate of Incorporation and By Laws

The adoption of the proposed Certificate of Incorporation will be deemed to have occurred and be effective as of the Effective Date without any further action by the directors or stockholders of the Debtors or Reorganized Ultra. On the Effective Date, or as soon thereafter as is practicable, Ultra will file, with the Secretary of State of the State of Delaware, the Certificate of Incorporation and such shall be the Certificate of Incorporation for Reorganized Ultra. The Certificate of Incorporation includes a provision prohibiting the issuance of non-voting equity securities under the Plan solely to the extent and for the period required by section 1123(a)(6) of the Bankruptcy Code. The issuance of the New Ultra Stock is hereby authorized without the need for any further corporate action or action by the board of directors or shareholders of Reorganized Ultra.

4.4     Securities to be Issued Pursuant to this Plan: New Ultra Stock

On the Effective Date, Reorganized Ultra shall have authorized and may issue shares of New Ultra Stock without further act or action under applicable laws, regulations, rules or orders. All shares of New Ultra Stock to be issued pursuant to the Plan shall be, upon issuance, fully paid and non-assessable.

HF 4795871v.15 #13998/0002

4.5     Cancellation of Existing Equity Interests

As of the Effective Date, all existing Equity Interests in the Debtors, without any further action, shall be cancelled, annulled and extinguished and all certificates or other instruments representing such Equity Interests shall be void.

4.6     The Ultra Shareholders Agreement

The Ultra Shareholders Agreement shall be effective as of the Effective Date and shall govern all of the rights and obligations among Reorganized Ultra and the recipients of 5% or more of New Ultra Stock issued pursuant to the Plan.

4.7     Dissolution of Ultra Stores Puerto Rico, Inc. and Ultra Stores USVI, Inc.

It is expected that, effective as of the Effective Date, Ultra Stores Puerto Rico, Inc. and Ultra Stores USVI, Inc. shall be deemed dissolved by virtue of confirmation of the Plan without any further action by the Debtors, their boards of directors or equity holders, and all operating or similar agreements respecting such dissolved entities shall be deemed terminated as of the Effective Date without further action.  The Plan and the procedures provided for herein shall satisfy all non-bankruptcy requirements respecting the filing of any documents with the Secretary of State in which Ultra Stores Puerto Rico, Inc. and Ultra Stores USVI, Inc. were organized or authorized to do business.  However, if the Debtors determine that non-dissolution of the Subsidiaries would result in a more favorable tax outcome for the Debtors, the Subsidiaries may not be dissolved under the Plan, but may continue to exist as part of Reorganized Ultra.  In addition, the Debtors with the consent of BoA, Crystal and the Creditors' Committee, reserve their rights to otherwise amend the corporate structure of the reorganized Debtors, in order to maximize the Debtors' tax benefits.

4.8     Corporate Action

On the Effective Date, and without limitation of any other provision of the Plan, the adoption and filing of the Certificate of Incorporation, the by-laws of Reorganized Ultra, the Ultra Shareholders' Agreement, the Management and Employee Incentive Plan, and all other actions and documents contemplated to be taken or executed on the Effective Date, shall be authorized and approved in all respects pursuant to the Plan.  All matters provided for in the Plan involving the corporate structure of the Debtors or Reorganized Ultra, and any corporate action required by the Debtors or Reorganized Ultra in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by officers, directors and employees of the Debtors or Reorganized Ultra.  On the Effective Date, the appropriate officers of Reorganized Ultra are authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of Reorganized Ultra without the need for any required approvals, authorizations, or consents, except and solely to the extent provided for in the Plan.

HF 4795871v.15 #13998/0002

# ARTICLE V
## MEANS OF DISTRIBUTION AND IMPLEMENTATION

5.1     Distribution Provisions

    (a)     Date of Distributions

Unless otherwise provided herein, the Distributions to be made hereunder shall be made on the Effective Date or as soon as practicable thereafter and deemed made on the Effective Date. In the event that any Distribution or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such Distribution or the performance of such act maybe completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

    (b)     Delivery of Distributions

All Distributions to any holder of an Allowed Claim shall be to the address of such holder as set forth on the Schedules, or the books of the Debtors, unless the Debtors have been notified in writing of a change of address, including, without limitation, by filing of a proof of Claim by such holder that contains an address for such holder different from the address reflected in the Schedules or records of the Debtors. In the event that any Distribution to any holder is returned as undeliverable, the appropriate Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such Distribution shall be made to such holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date or the Distribution Date, whichever shall apply. After such dates, all unclaimed property or interests in property shall revert to the Debtors, and the Claim of any other holder of such property or interest in property shall be discharged and forever barred. All unclaimed shares of New Ultra Stock shall be cancelled by Reorganized Ultra or added to treasury, in Reorganized Ultra's discretion.

    (c)     Fractional Shares

No fractional shares of New Ultra Stock shall be distributed. For purposes of any Distribution, fractional shares of New Ultra Stock shall be rounded down to the previous whole number.

    (d)     Setoffs and Recoupment

The Debtors may, but shall not be required to, set off against, or recoup from, any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that the Debtors may have against the Claimant, but neither the failure to do so nor allowance of any Claim hereunder

shall constitute a waiver or release by the Debtors of any such Claim they may have against the Claimant; provided, however, that the Debtors shall have no set off or recoupment rights in respect of the DIP Claim, the Pre-Petition First Lien Claim, or the Crystal Pre-Petition Term Loan Claim.

(e)     Distributions After Effective Date

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed shall be deemed to have been made on the Effective Date.

(f)     Distributions to Holders as of the Confirmation Date

As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holder of any Claims. The Debtors, Reorganized Ultra and the Disbursing Agent shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Confirmation Date.

5.2     Plan Funding

All Cash Distributions contemplated in the Plan shall be funded by borrowings under the Post-Confirmation BoA Loan Facility and the present and ongoing business operations of the Debtors and Reorganized Ultra.

5.3     The Management and Employee Incentive Plan

The Management and Employee Incentive Plan shall be adopted (and shall be deemed adopted) on the Effective Date, and by voting to accept the Plan, all holders of Claims shall be deemed to have ratified and approved such plan. The Management and Employee Incentive Plan shall be effective upon the Effective Date in accordance with the terms thereof and shall provide for the issuance of shares (representing, on a fully diluted basis, 26% of the New Ultra Stock outstanding on the Effective Date assuming the exercise of all options or warrants outstanding on the Effective Date whether or not presently exercisable on the Effective Date) to management and employees of Reorganized Ultra on the terms and conditions set forth therein.

5.4     Post-Confirmation Intercreditor Agreements

From and after the Effective Date, the respective Liens and Claims of BoA under the Post-Confirmation BoA Loan Facility, Crystal under the Crystal Exit Loan Documents, the Trade Lien Collateral Agent, and the Claims arising under the Unsecured Creditors Note shall be subject to and governed by the Post-Confirmation Intercreditor Agreements. All holders of Allowed Class 5 Unsecured Claims, Reorganized Ultra, the Loan Parties (as defined in the

Subordination Agreement), BoA and Crystal, and all of their respective successors and assigns, are deemed to have executed and be parties to the certain Subordination Agreement substantially in the form to be filed as a supplement to the Plan prior to the deadline for voting whether to accept or reject the Plan, the terms of which are incorporated herein by reference.

5.5     Trade Lien Vendor Program

On the Effective Date, the Trade Lien Program Agreement shall be deemed ratified and assumed by Reorganized Ultra and thereafter shall continue in accordance with the terms thereof, subject to the terms of the applicable Post-Confirmation Intercreditor Agreement.

5.6     Consignors

Pending the Effective Date, the rights of Consignors shall continue to be governed by the terms of the Consignment Order and the Final DIP Order. On the Effective Date, Consignors holding any and all unpaid pre-Effective Date Allowed Claims solely in respect of Consigned Goods shipped by such Consignors (and received by the Debtors) prior to the Effective Date pursuant to a Consignment Agreement (collectively, the "Unpaid Consignor Claims Relating to Pre-Effective Date Shipments" and such Consigned Goods shipped and received by the Debtors prior to the Effective Date, collectively, the "Pre-Effective Date Consigned Goods"), shall, to the extent of their respective Unpaid Consignor Claims Relating to Pre-Effective Date Shipments, be deemed to have a valid, perfected security interest in their respective Pre-Effective Date Consigned Goods, which security interest in such Consigned Goods shall be senior to any security interest of BoA and Crystal in such Pre-Effective Date Consigned Goods, regardless of whether such Consignors have taken the necessary steps pursuant to applicable law to perfect such security interest and for such security interest to have priority over the security interest of BoA and Crystal. Following the Effective Date, such Consignors shall be paid their respective Unpaid Consignor Claims Relating to Pre-Effective Date Shipments in accordance with the terms and conditions of their respective Consignment Agreements, and on the Effective Date, such Consignors shall be deemed to have waived and released any claim against BoA and Crystal to seek to recover proceeds from the sale of any Pre-Effective Date Consigned Goods received by BoA or Crystal, whether such proceeds were received prior to the Effective Date, or subsequent to the Effective Date. Upon the Effective Date, the Consignment Order shall terminate and be of no force and effect, and the rights of Consignors with respect to Consigned Goods delivered to the Debtors after the Effective Date shall be governed by the terms and conditions of their respective Consignment Agreements, and applicable non-bankruptcy law (including the Uniform Commercial Code as enacted by applicable jurisdictions).

As soon as practicable after the Effective Date, the Debtors will provide a report to BoA, Crystal and the applicable Consignors of the amount of Pre-Effective Date Consigned Goods remaining on the Effective Date, on a vendor by vendor

HF 4795871v.15 #13998/0002

basis. The Debtors also will provide a monthly reporting of the status of the post-Effective Date sales of the Pre-Effective Date Consigned Goods and all payments made relating to such sales.

### 5.7 Post-Confirmation BoA Loan Facility

On or prior to the Effective Date, the Debtors or Reorganized Ultra, as the case may be, shall execute and deliver the Post-Confirmation BoA Loan Documents. The Post-Confirmation BoA Loan Documents shall be effective as of the Effective Date.

### 5.8 Crystal Exit Loan Documents

On or prior to the Effective Date, the Debtors or Reorganized Ultra, as the case may be, shall execute and deliver the Crystal Exit Loan Documents. The Crystal Exit Loan Documents shall be effective as of the Effective Date.

### 5.9 Cancellation and Surrender of Existing Securities and Agreements

Except as otherwise expressly provided for herein, or in any contract, instrument or other agreement or document created in connection with this Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to this Plan, all Equity Interests and any other promissory notes, share certificates, whether for a preferred or common stock (including any treasury stock), other instruments evidencing Claims or Equity Interests, other than a Claim that is being reinstated and rendered unimpaired, and all options, warrants, calls, rights, puts, awards, commitments or any other agreements of any character to acquire such interests shall be deemed cancelled and of no further force and effect, without any further act or action under applicable agreement, law, regulation, order or rule, and the obligations of the Debtors under the notes, share certificates and other agreements and instruments governing such Claims and Equity Interests shall be discharged. On the Effective Date, the holders of or parties to such cancelled notes, share certificates and other agreements and instruments shall have no rights arising from or relating to such notes, share certificates and other agreements and instruments or the cancellation thereof, except the rights provided pursuant to the Plan.

### 5.10 Aggregation of Claims

Subject to Article IX of the Plan, each and every General Unsecured Claim filed or to be filed in any of the Chapter 11 Cases of a single holder against the Estates of the Debtors shall be aggregated and deemed one single claim filed in Class 5 of the Plan.

### 5.11 Compensation and Benefit Programs

Except as otherwise provided by the Plan, all employment plans, policies, practices, programs and policies maintained by Ultra Stores, Inc. as of the

Effective Date shall remain in full force and effect following the Effective Date, subject to any and all rights of the Debtors and/or Reorganized Ultra under applicable non-bankruptcy law to amend or terminate such plans, policies, practices and programs.

## ARTICLE VI
## RIGHTS AND OBLIGATIONS OF THE DISBURSING AGENT

6.1    Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to (i) take all steps and execute all instruments and documents necessary to effectuate the disbursements to be made under this Plan; (ii) make Distributions contemplated by this Plan; (iii) comply with this Plan and the obligations thereunder; (iv) employ, retain, or replace professionals to represent it with respect to its responsibilities; and (v) exercise such other powers as may be vested in it pursuant to order of the Court or pursuant to this Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of this Plan.

6.2    Duties of the Disbursing Agent

The Disbursing Agent shall have the duties of carrying out the disbursements under this Plan, which shall include taking or not taking any action which the Disbursing Agent deems to be in furtherance thereof, including, from the date of its appointment, making payments and conveyances and effecting other transfers necessary in furtherance of this Plan.

## ARTICLE VII
## PROCEDURES FOR TREATING DISPUTED CLAIMS UNDER THE PLAN

7.1    Disputed Claims

Except as to applications for allowances of compensation and reimbursement of expenses under sections 330 and 503 of the Bankruptcy Code, the Debtors and/or Reorganized Ultra shall have the exclusive right to make and file objections to Claims subsequent to the Effective Date. All objections shall be litigated to Final Order, provided, however, that the Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any objections without approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, prior to the Effective Date, the Debtors, Crystal and the Creditors' Committee each may file objections to Administrative Expense Claims that are the subject of proofs of Claim or requests for payment filed with the Bankruptcy Court and serve such objections upon the holder of the Administrative Expense Claim, or other payment request as to which the objection is made.

HF 4795871v.15 #13998/0002

7.2    No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, payment or Distribution provided hereunder shall be made only with respect to the undisputed portion on account of such Claim unless prior to the date of such Distribution, the holder of such Claim obtains an order of the Bankruptcy Court, on notice to the Debtors, Crystal and the Creditors' Committee prohibiting the Debtors to defer such Distribution unless and until such Disputed Claim is Allowed pursuant to a Final Order.

7.3    Distributions After Allowance

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, a Distribution shall be made to the holder of such Allowed Claim in accordance with the provisions of this Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order or the objection(s) to a Disputed Claim are resolved, the appropriate Disbursing Agent shall provide to the holder of such Claim the Distributions to which such holder is entitled under this Plan.

7.4    Voting Rights of Holders of Disputed Claims

Pursuant to Bankruptcy Rule 3018(a), a Disputed Claim will not be counted for purposes of voting on this Plan to the extent it is Disputed, unless an order of the Bankruptcy Court is entered after notice and a hearing temporarily allowing the Disputed Claim for voting purposes under Bankruptcy Rule 3018(a). Such disallowance for voting purposes shall be without prejudice to the holders of such Disputed Claim seeking to have such Disputed Claim become an Allowed Claim for purposes of Distribution under this Plan.

**ARTICLE VIII**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

8.1    Assumed If Not Rejected

The Plan constitutes and incorporates a motion by the Debtors to assume, and the Confirmation Order shall, subject to payment of Cure Amounts as set forth in the Cure Notice (defined in Section 8.2 below), be deemed to be an order authorizing the assumption of, all executory contracts and unexpired leases to which the Debtors are a party except for those executory contracts and unexpired leases (a) listed on a supplement to be filed prior to the deadline for voting whether to accept or reject the Plan (which supplement may be modified on or before the Effective Date to add or remove contracts and leases) or (b) which have on or before the Effective Date been (i) rejected by Bankruptcy Court order or by operation of law, (ii) expressly assumed or rejected pursuant to an order of the Bankruptcy Court prior to the Confirmation Date, or (iii) included in a motion to assume or reject made by the Debtors which is pending before the Bankruptcy Court on the Confirmation Date. Nothing herein will be deemed to extend any

deadline previously set by the Court for filing proofs of Claims, including with regard to contracts and leases heretofore rejected by Court order. If for any reason a prior order of the Court setting a deadline for the filing of proofs of Claims is found to be not applicable to the damages resulting from the rejection of an executory contract or unexpired lease, such Claim for damages shall nevertheless be forever barred and shall not be enforceable against the Debtors, their estates or Reorganized Ultra unless a proof of Claim is filed with the Bankruptcy Court not later than thirty (30) days after entry of the Confirmation Order.

8.2    Objection to Assumption

In connection with the proposed assumption of the Debtors' executory contracts and unexpired leases, the Debtors will file with the Court and serve upon all counterparties a notice substantially in the form annexed hereto as Exhibit B (the "Cure Notice") which will set forth the amounts for unpaid monetary obligations under such contract or lease (the "Cure Amount") and the procedures to be adhered to if an entity objects to the Cure Amount.

Any entity which is a party to an executory contract or unexpired lease to be assumed hereunder shall, in accordance with the Cure Notice, file with the Bankruptcy Court and serve upon Debtors' Counsel any objection to assumption and the Cure Amount setting forth the basis for the objection, the nature of any alleged defaults thereunder and all monetary and non-monetary cures allegedly due. Failure to file an objection in accordance with the procedures set forth in the Cure Notice shall be deemed a consent to the proposed assumption and to the Cure Amount due, as reflected in the Debtors' books and records.

8.3    Third-Party Agreements

All third-party agreements executed in connection with the DIP Financing Agreements, Pre-Petition First Lien Agreements and Crystal Term Loan Documents, including any and all access agreements and agreements with any customs broker, licensor, lessor, landlord, freight forwarder or credit card processor (collectively, "Third-Party Agreements") shall be reinstated and shall apply with full force and effect in connection with the Post-Confirmation BoA Loan Documents and Crystal Exit Loan Documents, as applicable. For avoidance of doubt, the agreements executed among BoA, Crystal, Ultra Stores, Inc. and (a) Filene's Basement, Inc. ("FB") in respect of that certain Licensed Department Agreement dated as of November 13, 2007, between FB and Ultra Stores, Inc., (b) Burlington Coat Factory Warehouse Corporation ("BCFWC") in respect of that certain License Agreement dated March 20, 2000, between BCFWC and Ultra Stores, Inc. and (c) Daffy's Inc. ("Daffy's") in respect of that certain License Agreement dated March 20, 2000, between Daffy's and Ultra Stores, Inc. shall all constitute Third-Party Agreements.

HF 4795871v.15 #13998/0002

## ARTICLE IX
## SUBSTANTIVE CONSOLIDATION

9.1    <u>Substantive Consolidation</u>. Except as expressly provided in the Plan, the Debtors and Reorganized Ultra shall continue to maintain their separate corporate existence for all purposes other than the treatment of Claims under the Plan. Except as expressly provided in the Plan, on the Effective Date: (i) all assets (and all proceeds thereof) and liabilities of the Debtors shall be deemed merged or treated as though they were merged into and with the assets and liabilities of each other, (ii) no distributions shall be made under the Plan on account of intercompany Claims among the Debtors and all such Claims shall be eliminated and extinguished, (iii) all guaranties of the Debtors of the obligations of any other Debtor shall be deemed eliminated and extinguished so that any Claim against any Debtor and any guarantee thereof executed by any Debtor and any joint or several liability of any of the Debtors shall be deemed to be one obligation of the consolidated Debtors, (iv) each and every Claim filed or to be filed in any of the Chapter 11 Cases shall be deemed filed against the consolidated Debtors, and shall be deemed one Claim against and obligation of the consolidated Debtors, and (v) for purposes of determining the availability of the right of set off under section 553 of the Bankruptcy Code, the Debtors shall be treated as one entity so that, subject to the other provisions of section 553 of the Bankruptcy Code, debts due to any of the Debtors may be set off against the debts of any of the other Debtors.  Such substantive consolidation shall not (other than for purposes relating to the Plan) affect the legal and corporate structures of Reorganized Ultra. Notwithstanding anything in this section to the contrary, all post-Effective Date fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930, if any, shall be calculated on a separate legal entity basis for each Debtor.

## ARTICLE X
## CONDITIONS PRECEDENT

10.1    <u>Conditions Precedent to Effective Date</u>

The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(i)  the Confirmation Order shall have become a Final Order;

(ii)   all actions necessary to implement the terms and provisions of the Plan including, but not limited to, execution and delivery of all agreements, instruments or other documents, including the Post-Confirmation BoA Loan Documents, the Crystal Exit Loan Documents, the Management and Employee Incentive Plan, the Employment Agreements, and the Post-Confirmation Intercreditor Agreements, shall have been completed, and such agreements shall have become effective in accordance with their terms;

HF 4795871v.15 #13998/0002

(iii) the conditions precedent contained in the Post-Confirmation BoA Loan Documents shall have occurred or been waived by BoA in accordance with the terms of such documents;

(iv) the conditions contained in Section 2.25 of the DIP Credit Agreement shall have been met or waived by BoA in accordance with the terms of such agreement;

(v) Administrative Expense Claims (including reserves for Disputed Administrative Expense Claims, but excluding Professional Fees) shall not exceed $10 million;

(vi) Priority Non-Tax Claims (including reserves for Disputed Priority Non-Tax Claims) shall not exceed $100,000 and Priority Tax Claims shall not exceed $900,000.

(vii) the Confirmation Order shall have been entered by the Bankruptcy Court on or before July 10, 2009 and shall have become a Final Order;

(viii) the Effective Date shall have occurred on or before July 20, 2009.

(ix) there shall have been no material adverse change in the business, assets or prospects of the Debtors between the Petition Date and the Effective Date; and

(x) any material changes to the business plan and projections of the Debtors/Reorganized Ultra shall be in form and substance reasonably acceptable to Crystal, BoA and the Creditors' Committee.

10.2     Waiver of Conditions Precedent to Effective Date

The conditions set forth in Sections 10.1 may not be waived except upon the express written consent of the Debtors, BoA, Crystal and the Creditors' Committee.

10.3     Effect of Failure of Conditions

If the consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or Disclosure Statement shall: (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors; (ii) prejudice in any manner the rights of the Debtors or any creditors; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors or any creditors in any respect.

HF 4795871v.15 #13998/0002

## ARTICLE XI
## EFFECT OF CONFIRMATION OF THIS PLAN

11.1    Continued Corporate Existence

Reorganized Ultra shall continue to exist after the Effective Date with all powers of a corporation under the laws of the State of Delaware and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Delaware law; and, following the Effective Date, Reorganized Ultra may operate its business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules or by the Court, subject only to the terms and conditions of this Plan and the Confirmation Order.

11.2    Vesting of Assets

Except as otherwise expressly provided in this Plan and the Confirmation Order, on the Effective Date, Reorganized Ultra shall be vested with all of the property of the Estates free and clear of all Claims, liens, encumbrances, charges and other interests including but not limited to that of Claimants and holders of Equity Interests.

11.3    Discharge of the Debtors

(a)    Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtors or any of their assets or properties, and, regardless of whether any property shall have been abandoned by order of the Bankruptcy Court, retained, or distributed pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtors, and each of them, shall (i) be deemed discharged and released under section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in section 502 of the Bankruptcy Code, whether or not (A) a Proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (B) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, (C) a Claim based upon such debt is or has been disallowed by order of the Bankruptcy Court, or (D) the holder of a Claim based upon such debt accepted the Plan, and (ii) terminate all Equity Interests.

(b)    As of the Effective Date, except as provided in the Plan or the Confirmation Order, all Persons shall be precluded from asserting against the Debtors or Reorganized Ultra or any of their assets or properties, any other or further claims, debts, rights, causes of action, claims for relief, liabilities, or equity interests relating to the Debtors based upon any act,

HF 4795871v.15 #13998/0002

omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities against the Debtors and termination of all Equity Interests, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment obtained against the Debtors at any time, to the extent that such judgment relates to a discharged Claim or terminated Equity Interest. None of the foregoing shall preclude an applicable governmental taxing authority from conducting a tax audit, covering the postpetition, pre-Effective Date period or from asserting and recovering a Claim arising from such tax audit, to the extent such Claim is an Allowed Claim.

11.4    Injunction

(a)    Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all Persons that have held, currently hold, may hold, or allege that they hold, a Claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, Reorganized Ultra, and their respective subsidiaries or their property on account of any such discharged Claims, debts, or liabilities or terminated Equity Interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff or right of subrogation of any kind against any debt, liability, or obligation due to the Debtors or Reorganized Ultra; or (v) commencing or continuing any action, in each such case in any manner, in any place, or against any Person that does not comply with or is inconsistent with the provisions of the Plan.

(b)    As of the Effective Date, all Persons that have held, currently hold, or may hold, a Claim, obligation, suit, judgment, damage, debt, right, cause of action, or liability that is released, or an Equity Interest that is terminated, pursuant to Section 11.3 or 11.7 of the Plan are permanently enjoined from taking any of the following actions on account of such released Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, or liabilities, or such terminated Equity Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; (iv) asserting a setoff against any debt, liability, or obligation due to any released Person; or (v) commencing or continuing any action, in any manner, in any place, or

against any Person that does not comply with or is inconsistent with the provisions of the Plan.

(c)     Without limiting the effect of the foregoing provisions of this Section 11.4 upon any Person, by accepting a Distribution pursuant to the Plan, each holder of an Allowed Claim receiving a Distribution pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section 11.4.

(d)     Nothing in this Section 11.4 shall impair (i) the rights of any holder of a Disputed Claim to establish its Claim in response to an objection filed by the Debtors or Reorganized Ultra, (ii) the rights of any defendant in an Avoidance Action filed by the Debtors to assert defenses in such action, or (iii) the rights of any party to an executory contract or unexpired lease that has been assumed by the Debtors pursuant to an order of the Bankruptcy Court or the provisions of the Plan to enforce such assumed contract or lease.

11.5     Extinguishment of Causes of Action Under the Avoiding Power Provisions

On the Effective Date, all rights, claims, causes of action, avoiding powers, suits and proceedings arising under sections 506(c), 544, 545, 547, 548, 549 and 553 of the Bankruptcy Code shall be extinguished unless then pending.  Except to the extent released in the Plan (including under Section 11.7) or order of the Bankruptcy Court (including the Final DIP Order), Reorganized Ultra shall have, retain, reserve, and be entitled to assert all other Claims, causes of action, rights of setoff and other legal or equitable defenses which the Debtors had immediately prior to the Petition Date as fully as if the Chapter 11 Cases had not been commenced; and any of Reorganized Ultra's legal and equitable rights respecting any such Claim which is not specifically waived, extinguished or relinquished by this Plan or order of the Bankruptcy Court (including the Final DIP Order) may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

11.6     Votes Solicited in Good Faith

The Debtors have, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.  The Debtors and the Released Parties participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the issuance of the securities offered under this Plan and therefore have not, and on account of such issuance and solicitation will not, be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or the offer and issuance of the securities under this Plan.

HF 4795871v.15 #13998/0002

11.7    Releases and Related Matters

(a)    Releases by the Debtors

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors, Reorganized Ultra and any Person or Entity seeking to exercise the rights of the Debtors' Estates, including without limitation, any successor to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action (including Avoidance Actions), and liabilities whatsoever in connection with or related to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan (other than the rights of the Debtors and Reorganized Ultra to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, Reorganized Ultra, the Chapter 11 Cases, or the Plan, and that may be asserted by or on behalf of the Debtors, the Estates, or Reorganized Ultra against (i) any of the other Debtors and any of the Debtors' non-Debtor subsidiaries, (ii) any of the present or former shareholders, directors, officers, employees or advisors of any of the Debtors or any of the Debtors' non-Debtor subsidiaries, (iii) any Professionals of the Debtors, (iv) Crystal and BoA and their respective affiliates, representatives, agents and professional advisors, (v) the Creditors' Committee, its members, and its and their advisors, respectively (but not its members in their individual capacities), (vi) the Ad Hoc Committee, its members and its and their advisors, respectively (but not its members in their individual capacities), and (v) the Disbursing Agent; provided, however, that nothing in this Section 11.7 shall be deemed to prohibit the Debtors or Reorganized Ultra from asserting and enforcing any claims, obligations, suits, judgments, demands, debts, rights, causes of action or liabilities that they may have against any employee (other than any director or officer) that is based upon an alleged breach of a confidentiality, noncompete, or any other contractual or fiduciary obligation owed to the Debtors or Reorganized Ultra. On the Effective Date, to the extent not otherwise terminated pursuant to the terms of the Final DIP Order, the Challenge Period shall terminate, all parties in interest, including the Creditors' Committee, shall be barred from asserting a Challenge, and any pending Challenge shall be deemed released and dismissed with prejudice without further order or action.

(b)    Releases by Holders of Claims and Consignors

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim that receives a Distribution

pursuant to the Plan and all Consignors shall be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever against the present or former shareholders, directors, officers, employees or advisors of any of the Debtors or their non-Debtor affiliates, Crystal (and its affiliates, representatives, agents and professional advisors), BoA (and its affiliates, representatives, agents and professional advisors), the Creditors' Committee (and its members, affiliates, representatives, agents and professional advisors), the Ad Hoc Committee (and its members, affiliates, representatives, agents and professional advisors) and the Disbursing Agent (collectively, the "Releasees"), in connection with or related to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan (other than the rights under the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereunder arising, in law, equity, or otherwise, that are based in whole or part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan.

11.8    Exculpation and Limitation of Liability

(a)    None of the Debtors, Reorganized Ultra, their respective subsidiaries, Crystal, BoA , the Creditors' Committee (as to itself or any of its members) or the Ad Hoc Committee (as to itself or any of its members), or any of their respective present or former members, officers, managers, directors, employees, advisors, Professionals, or agents, shall have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, the solicitation or acceptance of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions that are the result of fraud, gross negligence, or willful misconduct; provided, however, that the foregoing shall not extinguish the personal liability of the aforementioned Entities for any statutory violation of applicable tax laws; provided further, however, that the foregoing is not intended to limit or otherwise impact any defense of qualified immunity that may be available under applicable law.

(b)    Notwithstanding any other provisions of the Plan, no Holder of a Claim or an Equity Interest, no other party-in-interest, none of their respective agents, employees, representatives, advisors, attorneys, or affiliates, and none of their respective successors or assigns shall have any right of action

HF 4795871v.15 #13998/0002

against any of the Debtors, Reorganized Ultra, any of the Debtors' or Reorganized Ultra's subsidiaries, Crystal, BoA or the Creditors' Committee, or of their respective present or former members, officers, managers, directors, employees, advisors, Professionals, or agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, negotiation, or implementation of the Plan, solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for acts or omissions which are the result of fraud, gross negligence, or willful misconduct; provided, however, that the foregoing shall not bar any right of action asserted by a governmental taxing authority against the aforementioned Entities for any statutory violation of applicable tax laws.

## 11.9   Term of Bankruptcy Injunction or Stays

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

## 11.10   Preservation of Insurance

The Debtors' discharge and release from all Claims as provided herein, except as necessary to be consistent with this Plan, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors, Reorganized Ultra (including, without limitation, its officers and directors) or any other Person or Entity.

## 11.11   Officers' and Directors' Indemnification Rights and Insurance

(a)   Indemnification Obligations owed to directors, officers and employees of the Debtors (or the estates of any of the foregoing) who served or were employed by the Debtors as of or after the Petition Date for claims arising after the Petition Date, excluding claims resulting from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code and Section 8.1 of the Plan. Indemnification Obligations owed to any such directors, officers and employees of the Debtors (or the estates of any of the foregoing) for claims arising before the Petition Date or for claims resulting from gross negligence, willful misconduct, breach of fiduciary duty, or intentional tort, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan.

HF 4795871v.15 #13998/0002

(b)     All Indemnification Obligations owed to directors, officers and employees of the Debtors who served or were employed by the Debtors prior to, but not after, the Petition Date (i.e., those directors, officers and employees who did not serve in such capacity after the Petition Date) shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected pursuant to section 365 of the Bankruptcy Code under the Plan.

(c)     Upon and after the Effective Date, the Debtors or Reorganized Ultra, as the case may be, shall continue to maintain director and officer insurance coverage for those Persons covered by any such policies in effect during the pendency of the Chapter 11 Cases.

## ARTICLE XII
## RETENTION OF JURISDICTION

12.1    <u>Scope of Jurisdiction</u>

Pursuant to sections 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain and have exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Cases and this Plan pursuant to, and for the purpose of sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases pending on the Confirmation Date and the allowance of Claims resulting therefrom;

(b)     To hear and determine any and all adversary proceedings, applications, and contested matters, including any remands of appeals, pending on the Effective Date;

(c)     To ensure that Distributions to holders of Allowed Claims are accomplished as provided by this Plan;

(d)     To resolve disputes as to the ownership of any Claim;

(e)     To hear and determine any timely objections to or applications concerning Claims or the allowance, classification, priority, compromise, estimation, or payment of any Administrative Expense Claim, or Claim, or Equity Interest.

(f)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(g)     To enter and implement such orders as may be necessary or appropriate to execute, interpret, implement, consummate, or enforce this Plan and the transactions contemplated thereunder;

41

(h)    To consider any modification of this Plan pursuant to section 1127 of the Bankruptcy Code, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)    To hear and determine applications for compensation and reimbursement of expenses of Professional Persons under sections 330, 331 and 503(b) of the Bankruptcy Code;

(j)    To hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of this Plan;

(k)    To hear and determine any issue for which this Plan requires a Final Order of the Court;

(l)    To enter and implement orders and to take such other actions as may be necessary or appropriate to restrain interference by any Person or Entity with the consummation or implementation of this Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, or indemnity obligations contained in this Plan and the Confirmation Order;

(m)    To hear and determine motions seeking a compromise, settlement, release, or abandonment of any Contested Claim or Designated Claim or any claim or cause of action arising on or before the Effective Date by or against the Debtors;

(n)    To recover all assets of the Debtors and property of the Estates, wherever located;

(o)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(p)    To hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to this Plan; and

(q)    To enter a final decree closing the Chapter 11 Cases.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

13.1   Creditors' Committee

The Creditors' Committee shall be extinguished on the Effective Date, and after the Effective Date the Creditors' Committee shall have no authority or obligation

HF 4795871v.15 #13998/0002

to act as a committee or as a representative of holders of Class 5 Claims or to take any other actions on behalf of said Class.

13.2    Compliance with Tax Requirements

In connection with this Plan, Reorganized Ultra and the Disbursing Agent shall comply with all withholding and reporting requirements imposed by federal, state, local and foreign taxing authorities and all Distributions hereunder shall be subject to such withholding and reporting requirements.

13.3    Payment of Statutory Fees

All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on or before the Effective Date and all such fees payable after the Effective Date shall be paid by Reorganized Ultra.

13.4    Pre-Confirmation Modification

This Plan may be altered, amended or modified prior to the entry of the Confirmation Order as provided in section 1127 of the Bankruptcy Code with the written consent of BoA, Crystal and the Committee.

13.5    Post-Confirmation Immaterial Modifications

The Debtors or Reorganized Ultra may, prior to the Effective Date, with the written consent of the Creditors' Committee, BoA and Crystal and without the approval of the Bankruptcy Court, and without notice to all holders of Claims and Interests, insofar as it does not materially adversely affect the interest of holders of Claims and Interests, correct any defect, omission or inconsistency in this Plan in such manner and to such extent as may be necessary to expedite the execution of this Plan.

13.6    Revocation or Withdrawal of Plan

The Debtors may revoke or withdraw, with the written consent of Crystal, the Plan at any time prior to the Effective Date. If the Plan is so revoked or withdrawn, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

13.7    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or Bankruptcy Rules), the laws of the State of New York (without reference to the conflicts of laws provisions thereof) will govern the

HF 4795871v.15 #13998/0002

construction and implementation of the Plan and any agreements, documents and instruments in connection with this Plan.

13.8    Withholding and Reporting Requirements

In connection with the consummation of the Plan, the Debtors or Reorganized Ultra, as the case may be, shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

13.9    Notices

All notices, requests or demands for payments shall be in writing and shall be deemed to have been given when personally delivered by hand or deposited in any depository under the control of the United States Postal Service or when received by courier or facsimile transmission.  Notices shall be sent or delivered to:

Ultra Stores, Inc.
122 South Michigan Avenue Suite 800
Chicago, IL 60603
Tel. No. (312) 922-3800
Fax No. (312) 922-3933
Attn:    Daniel H. Marks
            Joseph Donaghy

with a copy to:

Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
Tel. No. (212) 592-1400
Fax No. (212) 592-1500
Attn:    Andrew C. Gold, Esq.
            Joshua J. Angel, Esq.

Proskauer Rose LLP
One International Place
Boston, MA 02110
Tel. No. (617) 526-9749
Fax No. (617) 526-9899
Attn:    Peter J. Antoszyk

Proskauer Rose LLP
1585 Broadway
New York, New York 10036

HF 4795871v.15 #13998/0002

Tel. No. (212) 969-3000
Fax No. (212) 969-2900
Attn: Scott K. Rutsky

Reimer & Braunstein LLP
Three Center Plaza
Boston, MA 02108
Tel. No. (617) 880-3550
Fax No. (617) 692-3550
Attn:   Arthur R. Cormier

Moses & Singer LLP
405 Lexington Avenue
New York, NY 10174
Tel. No. (212) 554-7840
Fax No. (917) 206-4323
Attn:   Lawrence L. Ginsburg

and to any other address designated by Ultra to interested parties.

### 13.10   Post-Confirmation Date Service List

From and after the Confirmation Date, all notices of appearance and demands for service of process filed with the Court prior to such date shall no longer be effective.  No further notices, other than notice of entry of the Confirmation Order shall be required to be sent to such Entities.

### 13.11   Exemption From Certain Transfer Taxes

Pursuant to section 1146(a)of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under or in connection with the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument or transfer under, in furtherance of, or in connection with the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

### 13.12   Filing or Execution of Additional Documents

On or before the Effective Date, the Debtors or Reorganized Ultra will file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

### 13.13   Section 1145 Exemption

Pursuant to, in accordance with, and to the extent provided under section 1145 of the Bankruptcy Code, the issuance of the New Ultra Stock and all other securities

HF 4795871v.15 #13998/0002

that may be deemed to be issued under this Plan shall be exempt from the registration requirements of Section 5 of the Securities Act, as amended, and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in such New Ultra Stock and all such other securities, and is deemed to be a public offering of New Ultra Stock.

Dated: June 15, 2009

Respectfully Submitted,

ULTRA STORES, INC., ULTRA STORES PUERTO RICO, INC. and ULTRA STORES USVI, INC.


By:    /s/ Daniel Marks
Title:  President

HF 4795871v.15 #13998/0002